TO:____________________
YOU ARE HEREBY NOTIFIED TO PLEAD TO THE ENCLOSED WITHIN TWENTY (20) DAYS OF SERVICE HEREOF OR A DEFAULT JUDGMENT MAY BE ENTERED AGAINST YOU.
BY:____________________
ATTORNEY

KEPNER, KEPNER & CORBA, P.C.
ATTORNEYS AT LAW
123 West Front Street
Berwick, Pennsylvania 18603
570.752.2766
FACSIMILE: 570.752.7894

WE HEREBY CERTIFY THAT THE WITHIN IS A TRUE AND CORRECT COPY OF THE ORIGINAL FILED IN THIS ACTION
BY:____________________
ATTORNEY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KRISTIE ROSPENDOWSKI, PLAINTIFF | : | CIVIL ACTION |
| | : | NO. ______ OF 2016 |
| VS. | : | |
| COLUMBIA COUNTY SHERIFF | : | |
| DEFENDANTS | : | JURY TRIAL DEMANDED |

## COMPLAINT

The Plaintiff, KRISTIE ROSPENDOWKSI, by and through her attorneys, FRANKLIN E. KEPNER, JR., ESQUIRE, and KEPNER, KEPNER & CORBA, P.C., hereby complains of the Defendants as follows:

1. This is an action at law to redress the deprivation of a right, privilege, or immunity secured to the Plaintiff by the Civil Rights Act of 1861, 42 U.S.C. Section 2000 (e) et seq.

2. Jurisdiction of this Court is invoked under 28 U.S.C. Section 1331 and 1343, and 42 U.S.C. Section 2000 (e) et seq., this being an action authorized by law to redress the deprivation of a right, privilege and immunity secured to the Plaintiff by the Constitution of the United States.

3. The amount in controversy exceeds SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

5. All actions complained of herein have taken place within the jurisdiction of the United States District for the Middle District of Pennsylvania, and all actions involve the Plaintiff and the Defendant who resides within this jurisdiction or are authorized to do business within this jurisdiction.

6. During all times germane hereto, the Plaintiff, Kristie Rospendowski, was a citizen of the United States of America. During all times mentioned herein, the Plaintiff resided at 50 Ezzyk Road, Berwick, Columbia County, Pennsylvania.

7. During all times germane hereto, the Defendant Columbia County Sheriff's Office is a County Office located at 35 West Main Street, Bloomsburg, Columbia County, Pennsylvania.

8. This action has been taken after the Plaintiff received a Notice of a Right to Sue from the United States Equal Employment Opportunity Commission. A copy of the said Notice of a Right to Sue is attached hereto and made a part hereof and marked "A."

10. The Plaintiff was hired by the said Defendant as a Sheriff's Deputy on October 12, 2010.

11. The Plaintiff, was injured on the job in 2011 while picking up a vehicle for the sheriff's department. The Plaintiff remains an employee of the Defendant but is been on Workman's Compensation. The Plaintiff was cleared by the doctor to return to work but Columbia County refuses to recall her. She remains ready willing and able to return to her former position but her employer has refused to call her back to work despite her requests.

## COUNT I

12. The Plaintiff incorporates by reference all averments set forth in paragraphs one (1) through eleven (11) above as if set forth at length herein.

13. The Defendant is an employer within the meaning of Title VII, 42 U.S.C. 2000 (e) et seq.

14. The Middle District of Pennsylvania is the judicial district in which the unlawful employment practice alleged by the Plaintiff was committed.

15. 42 U.S.C. Section 2000 (e) et seq provides that:

> **...it shall be an unlawful employment practice for any employer to fail or refuse to hire or discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, condition or privileges of employment because of such individual's sex or to limit, segregate or classify his employees for employment in a way which deprives or tends to deprive the individual of employment opportunities or otherwise adversely effects their status as employees because of the individual's sex.**

16. Section 42 U.S.C. Section 2000 (e) - 2 (m) further provides that "except as otherwise provided in this Title (42 U.S.C. Section 2000 (e) et seq) an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

17. The Defendant, by and through its agents, employees and representatives, discriminated with respect to compensation, terms, conditions and privileges of employment because of her sex and limited and classified the

Plaintiff for employment in a way which deprived her or tended to deprive the Plaintiff of employment opportunities, or otherwise adversely affected her status as an employee because of her sex.

18. The Defendant and its officers, agents, employees, servants and representatives have individually and/or collectively violated the Plaintiff's constitutional and civil liberties as aforementioned and, in addition have acted willfully, knowingly and maliciously.

19. The direct and proximate result of the Defendant's illegal and unconstitutional actions is that the Plaintiff has suffered severe monetary loss, loss of standing and reputation in the community, humiliation, emotional distress and such other damages as may become apparent.

20. During the Plaintiff's entire tenure with the Columbia County Sheriff's Office the Plaintiff was the only female employed as a deputy. Sheriff Timothy Chamberlain told people in the sheriff's office that women should not be in this line of work as a sheriff or deputy sheriff. He believed that females simply could not do this job. As a result, from the very beginning of her working as a deputy with Columbia County he treated her badly and harassed her.

21. On January 7th, 2011, the Plaintiff was picking up a vehicle for the sheriff's department and fell on the ice, breaking her ankle. Sheriff Timothy Chamberlain was at his father's house approximately an eighth of a mile away. There was no one to help the Plaintiff other than the Chief Deputy. The Plaintiff asked the sheriff to help her get up but he refused to do so.

22. The Plaintiff returned to work on March 14th, 2011 on light duty. On March 23rd, 2011 the Plaintiff called off work because the weather was very poor and there was a lot of snow and ice and she was walking on crutches. When the Plaintiff returned to work on March 24th, 2011 Sheriff Chamberlain would not talk to her. He refused to talk to her on both the 24th and 25th of March 2011.

23. On March 28th, 2011 Sheriff Chamberlain asked the Plaintiff if she had seen an envelope. When the Plaintiff told him that she had not seen this particular envelope, which had been dropped off, he blew up at her and started screaming at her in front of other employees in the office. When the Plaintiff asked him why he was angry he stated he was only joking. When the Sheriff went into his office the Plaintiff heard him refer to her as "incompetent."

24. On April 4th, 2011 Sheriff Chamberlain became upset because of the fact that the Plaintiff was hurt. He stated he was tired of people getting hurt. He said very loudly that anyone who gets hurt in the sheriff's office should be fired. He then looked at the Plaintiff and said "Right, Kristie?"

25. On April 5th, 2011 Sheriff Chamberlain was still mad at the Plaintiff. When the Plaintiff and Sheriff crossed paths in the hallway of the courthouse he said, "Since you haven't gone yet to the Academy I can still fire you".

26. On April 6th, 2011 the Sheriff's Office began training on a new computer system. The tech specialist who was helping with the system asked the sheriff if he had a programmer to put in all the warrants. The sheriff responded by

pointing at the Plaintiff and said "Yeah, she is. It's her punishment for breaking her ankle and if she doesn't do it, I'll fire her."

27.     In May 2011 the Plaintiff had a discussion with Sheriff Chamberlain about going to the Sheriff's Training Academy. The Plaintiff told him that she could go in August 2011 if her ankle was better. The Sheriff stated that if she did not go in August 2011 he would fire her. Males in the department, particularly Scott Mayernick, failed at the Academy twice but were not disciplined.

28.     On July 8th, 2011 the Plaintiff was asked for her bulletproof vest which was given to all sheriffs' deputies. The Sheriff refused to give the Plaintiff a bulletproof vest. All males in the department who asked for a vest received such a vest. The Sheriff said he would get the Plaintiff a vest when she graduated from the academy but never did.

29.     In July 2011 the Plaintiff asked for vacation time two weeks prior to leaving for the Academy in August. The Sheriff told the Plaintiff that she could not have that time off because another deputy, who had less seniority than she did, was going to get that time off. That deputy was a male. The Plaintiff had already been approved for that time off. The Plaintiff needs to take her son to Virginia so she could attend the Academy.

30.     On December 16th, 2011 the Plaintiff graduated from the Sheriff's Academy. The Plaintiff asked for a few personal days off from work. Sheriff Chamberlain stated she had to give him thirty (30) days notice to take personal days off from work. No males are required to give this thirty (30) day notice to

take personal days from work. While the sheriff finally gave the Plaintiff the time off from work, he was very difficult to work with. He said that the union contract required a thirty (30) day notice before taking personal days. The contract does not so provide.

31. Beginning with the Plaintiff's first day of employment until the present day, she has been paid less money per hour then male deputies with less seniority. Moreover, the Plaintiff was never given raises that were due according to her contract. The Plaintiff believe that all males were given their raises. When the Plaintiff was placed on light duty, because of the injury to her ankle, she was placed in a temporary position which had a lower pay rate than what she received in the sheriff's department. Under the union contract the Plaintiff was to be paid a regular rate, but was paid the lower rate.

32. The Plaintiff returned to full and regular duty on May 23rd, 2012. When the Plaintiff entered the Sheriff's Department she told him "two months". The Plaintiff explained that she meant she had a follow-up doctor's appointment in two (2) months. When the Plaintiff explained that to the Sheriff, he said that it was good because if the doctor had told her that she was on light duty for two (2) more months, he would have fired her.

33. In May 2012 Sheriff Chamberlain called the Plaintiff into his office because she had transported a prisoner with the certification she had received from completing the training at the Academy. The Sheriff became very angry and told her that it was his policy not to allow deputies to wear their weapons without

qualifying with the county. The Plaintiff explained that the certification she received from the Academy was sufficient and further explained that she did not want to be transporting prisoners to a prison facility without her weapon. The Sheriff became very angry with the Plaintiff. At the time, three (3) deputies and the Sheriff were carrying weapons without any certification. The Sheriff then asked her whether she had gotten her uniforms for the department. The Plaintiff explained that she had tried to get brown uniforms, which were worn by the Columbia County deputies, and that the supplier could not fit her. In response, the Sheriff said that if she could not get uniforms “they didn't need me”.

34. In May 2012 the Plaintiff stopped by Kranson's which was the supplier of the County’s uniforms. When the Plaintiff walked in to Kranson’s an employee stated that she was surprised that it was the Plaintiff because the Chief Deputy described the Plaintiff as being five hundred (500) pounds and said she was self-conscious because she thought her breasts were too big. The Chief Deputy told the Plaintiff this on numerous occasions. The Plaintiff told him that he was wrong. However, the Chief Deputy continued to state this which caused the Plaintiff great embarrassment. The supplier was not able to get uniforms in the Plaintiff’s size in a brown color because brown is not utilized by many departments anymore. However, the Plaintiff was told by the Sheriff that if she could not get proper fitting uniforms in brown, then “they would not need me anymore”. This caused the Plaintiff great anxiety.

35. Males in the Columbia County Sheriff's Office received uniforms at the county's expense. The Plaintiff was required to purchase polo shirts and certain pants at her own expense.

36. In June 2012 the Plaintiff was told that she had to get taser training. The Plaintiff was tasered in the Sheriff's Office with Sheriff Chamberlain in an adjoining office. It turned out that the Sheriff had not checked to see if the instructor was properly certified. The instructor was not certified. The Sheriff became angry at the Plaintiff and told her that she should have cleared when the taser was going to occur. The Sheriff's door to his office was open when this all occurred.

37. In September 2012 the Plaintiff was given a written disciplinary action by the Sheriff after he approved her going to an eye doctor's appointment. However, the Sheriff became angry because he saw the Plaintiff in the supermarket getting her prescription filled from the doctor. When the pharmacist told the Plaintiff that it would be approximately fifteen (15) to twenty (20) minutes to get the prescription filled, the Plaintiff went to the restaurant in the supermarket and got dinner. The Sheriff had written the Plaintiff up because she had not received approval to get the prescription filled. Males are treated differently than the Plaintiff.

38. The Plaintiff's son, Cole, was in a serious ATV accident in September 2012. As a result, he sustained a serious brain injury. The Plaintiff received paperwork to take time off under FMLA. The Plaintiff received the paperwork

from Columbia County. Sheriff Chamberlain sent the Plaintiff two (2) texts stating that she should contact him if she needed help with FMLA paperwork. The Plaintiff already had the paperwork and did not reply to the first text and simply acknowledged the second text. A few weeks later the Sheriff called the Plaintiff into his office and told her that he was going to suspend her for eight (8) days for taking FMLA leave without his approval and for other alleged infractions, none of which were valid under the contract. Even if the alleged violations were valid, which they were not, the Plaintiff should have only been given a three (3) day suspension.  Other male deputies had worse infractions but were not disciplined.

39. The Plaintiff held a part-time job at the local DUI Booking Center. The Sheriff called the center and told them that the Plaintiff could not work there because she had been suspended by the county. This was not true and was in violation of the Plaintiff's rights because she still had the right to work at the center.

40. The Plaintiff returned to work on December 3, 2012.  The Plaintiff was put on probation improperly and told she had to do a daily log. The Plaintiff grieved the probation through the union and the probation was reversed. However, the Plaintiff still had to do a daily log of all activities. No male was ever required to do a daily log. One (1) deputy sheriff tried to run over another deputy sheriff in anger. He received a three (3) day suspension rather than an eight (8) day suspension and was not required to do a daily log.

41. On December 10th, 2012, the Plaintiff handed the Chief Deputy her doctor's request that she be placed on light duty because of continuing problems with her ankle. The Sheriff and Chief Deputy approached the Plaintiff in the hallway of the Courthouse and took away her badge, keys and cell phone. Later her weapon was taken. No males ever had their badge, keys, cell phone and weapon taken from them when they were placed on light duty.

42. When the Plaintiff has requested light duty, she was told by the Defendant that it was not available. That statement was false.

43. On June 19th, 2014 the Plaintiff received notice that her health insurance had been canceled by Columbia County. The Plaintiff was told that she had not paid in a timely manner. However, the County never advised her that they were switching health insurance companies and that the premium had increased. Moreover, the County did not notify the Plaintiff until an extra month had passed. The Plaintiff did not have the financial ability to pay more money. As a result, the Plaintiff has been without health insurance since June 2014. However, the County made the cancellation retroactive to April 2014. As a result, the Plaintiff incurred a number of bills which were to be covered but now are not. The Plaintiff was billed for insurance through May 2014. However, she received a COBRA notice in April 2014.

44. On August 27th, 2014 the Plaintiff received a letter from Sheriff Chamberlain. The letter stated that he had determined that she had represented herself to be a Deputy Sheriff while she was on Workmen's Compensation. He

advised that the Plaintiff was not to represent herself as a Deputy Sheriff and that she was prohibited from performing any deputy sheriff duties. The Sheriff stated that if the Plaintiff continues to represent herself as a Deputy Sheriff, his office reserves all rights to take action against her including disciplinary action, civil or criminal actions. The Plaintiff has never purposely represented herself to be a Deputy Sheriff even though she still remains a Deputy Sheriff. On one (1) or more occasions people have stated to the Plaintiff that she looks familiar. The Plaintiff has responded by saying that she worked for the Columbia County Sheriff's Department. No males have ever been so threatened or harassed.

45. The Plaintiff's union membership was canceled by the Teamsters Union because the County of Columbia did not send in her union dues to the union even though the Plaintiff paid the County her portion of the union dues on February 21, 2013.

46. The Plaintiff has more seniority than both Scott Mayernick and Jeffrey Price but they are still paid more to this day. This will aid both males in getting promotions in the future. Furthermore, both males are allowed to choose their territory, vehicle and vacation before the Plaintiff.

47. Light duty work remains available to this day. However, Columbia County refuses to give the Plaintiff light duty work in the Sheriff's Office.

48. The Plaintiff has not been invited to the Sheriff's Office Christmas parties for 2013, 2014 and 2015 even though Sheriff Chamberlain states that the

Plaintiff remains a Deputy Sheriff and even though males who have retired have been invited to such parties.

49. Under the terms and conditions of the contract with Columbia County the Plaintiff was to receive yearly evaluations but was never evaluated.

50. The Plaintiff has asked for benefits under the Pennsylvania Heart and Lung Act which would pay her 100% of her salary. The Plaintiff believes she is entitled to such benefits but the County has only stated that they will look into the matter.

51. The County has failed and refused to keep the Plaintiff trained on updates so she can stay certified. On light duty the Plaintiff was refused permission from the Sheriff to access the county computers from home. Scott Mayernick, a male, has access to the computers from home.

52. The Sheriff refused to give the Plaintiff a concealed weapons permit while other males similarly situate to the Plaintiff have been given concealed weapons permits.

53. All of the adverse actions taken against the Plaintiff have been taken because of her sex, female.

**WHEREFORE**, the Plaintiff requests the following relief from this Honorable Court:

A. That the Court award the Plaintiff compensatory damages against the Defendant in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS;

B. That the Court award the Plaintiff the costs herein and any costs and fees incurred by the Plaintiff in prosecuting this case;

C. That the Court reward the Plaintiff her reasonable attorney's fees;

D. That the Court reward the Plaintiff reasonable expert fees in prosecuting this action;

E. That the Court award the Plaintiff punitive damages from the Defendants in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS;

F. Such other relief as the Court deems necessary and proper.

KEPNER, KEPNER & CORBA, P.C.

/s/ Franklin E. .Kepner, Jr.
BY:______________________________

FRANKLIN E. KEPNER, JR., ESQUIRE
123 WEST FRONT STREET
BERWICK, PA 18603
(570) 752-2766
ID #26156

S:\Clients 6001 to 6499\6379 Rospendowski, Kristie\PLEADINGS\Complaint 3-2016.wpd